HENRY STEUSOFF v. THE STATE OF TEXAS EX REL. LACOUR. .

No. 3107.

1. **Qualifications for an Office—Tax Assessor.**—A citizen of the State moving from one county into another within so short a time before an election as not to be qualified to vote at such election in the latter county still is eligible to election to and can hold the office of tax assessor of that county.

2. **Same—Fact Case.**—Steusoff had resided in Liberty County. He removed to Houston and resided there for a time. In June, 1890, he returned. He was elected tax assessor of Liberty County at the general election, November, 1890, and qualified. He was a citizen of the State. *Held,* he was eligible to the office.

APPEAL from Liberty. Tried below before Hon. L. B. Hightower. The opinion gives a statement.

*Sam. R. Perryman,* for appellant.—The presumption always is that a person chosen to an office is qualified to fill it, and it is never incumbent upon him to prove his eligibility. The only disqualification of appellant claimed in appellee's petition is that at the time of election he had

not resided in Liberty County six months, and in ruling upon a general demurrer to said petition the court was bound to presume he possessed all the other qualifications. Const. of 1876, art. 8, sec. 14; Id., art. 16, sec. 14; McCrary on Elections, secs. 36a, 223; Sayles' Civ. Stats., art. 706.

*Hume & Kleberg,* for appellee.—Appellant was not a qualified voter ("resident") of Liberty County either at the date of the election, November 4, 1890, or at the date of his assumption of the office of assessor, November 24, 1890, not having resided in that county for six months next prior to either of said dates, and was ineligible to be elected to or to hold said office. Sayles' Civ. Stats., arts. 1688–1690; Mech. on Pub. Office and Officers, sec. 67; Cool. Prin. of Const. Law, 257; McCrary on Elections, sec. 258; The State v. Smith, 14 Wis., top pp. 541–544, marg. pp. 499–502; The State v. Murray, 28 Wis., 97–101; The State v. Trumf, 50 Wis., 108–9, 112.

GAINES, ASSOCIATE JUSTICE.—This was an information in the nature of a *quo warranto* brought in the name of the State of Texas upon the relation of Gustavus Lacour, for the purpose of removing the appellant from the office of tax assessor of Liberty County. The appellant was chosen to that office at the general election held in November, 1890, and thereupon qualified and entered upon the discharge of the duties of the place. The relator was the appellant's predecessor in the office. The ground upon which the removal was sought was that the respondent was not a legal voter in the county at the time either of his election or of his qualification, and that therefore he was not eligible to the office.

The facts were that the appellant had been a resident and voter in Liberty County for many years; but in March, 1889, he removed with his family to the city of Houston, where he engaged in a mercantile business. In June, 1890, he moved back to Liberty County and resumed his residence. There was testimony tending to show that he took up his residence in Houston for a temporary purpose, and that it was never his intention to abandon permanently his home in Liberty County; but there was also evidence tending to establish the contrary conclusion. However, the jury found that he "had not lived in the county six months prior to the election," etc., and this may for the purposes of this opinion be assumed to be a finding of the issue against the appellant and the establishment of the fact that he was not a qualified voter in the county at the time he received a majority of the votes. We then have the question, Did the fact that he was not a legal voter in the county render him ineligible to the office of tax assessor?

There is no express provision to the effect that the tax assessor of a county must be a voter therein either in our Constitution or laws, and if we decide such to be the law we must hold that the rule results from

the fundamental principles of our form of government. It is said by a recent text writer: "When no limitations are prescribed the right to hold office under our political system is an implied attribute of citizenship, and is to be coextensive with that of voting at an election held for the purpose of choosing an incumbent for the office; those and those only who are competent to select the officer being deemed competent also to hold the office." Mechem on Public Office. The cases cited in support of this doctrine are The State v. Smith, 14 Wis., 539, and The State v. Murray, 28 Wis., 96. These cases involved the question of the eligibility of an alien to hold office under the Constitution and laws of Wisconsin, and the decisions were that citizens of the State only could hold office under the State. They are not authority in any sense for the proposition that a citizen of the State would be ineligible to office because for the time being he might be disqualified by reason of a change of residence from voting in a particular county. A similar question arose in The State v. McMillen, 36 Northwestern Reporter, 587, and there the court held that the claimant to an office was not eligible because at the time of the election he had not become a citizen of the State. In the opinion in that case it was said that in the absence of any constitutional or statutory law upon the subject none but voters are qualified to hold office. The case, however, did not call for so broad an announcement. In Atcheson v. Lucas, 83 Kentucky, 451, the Court of Appeals of Kentucky decided that a woman could not hold the office of jailer, but placed their decision upon a general construction of the Constitution of the State and not upon the fact that none but male persons were given the right to vote.

But even if the rule announced in the Nebraska case cited above be sound law, we do not think it could be properly applied to the case before us. If it be invoked to sustain a decision that none but the citizens of a State can hold offices under the State government, there is much to be said in its support. But in this State when a candidate at an election has received the plurality of the votes and at the same time has been debarred of the right to vote upon the sole ground that he has not resided in the county for the period of six months before the election, we think the reason for the rule altogether ceases. It follows, we think, that even upon the principles laid down in the cases first cited the appellant should be held eligible to the office to which he was chosen.

But there is a broader view of this question. In Barker v. The People, 3 Cowen, 703, the chancellor who delivered the opinion of the court said: "Eligibility to office is not declared as a right or principle by any express terms of the Constitution, but it rests as a just deduction from the express powers and provisions of the system. The basis of the principle is the absolute liberty of the electors and the appointing authorities to choose and appoint any person who is not made

ineligible by the Constitution.   Eligibility to office therefore belongs not exclusively or specially to electors enjoying the right of suffrage. It belongs equally to all persons whomsoever not excluded by the Constitution."   ·When a constitution has·been framed which contains no provision defining in terms who shall be eligible ·to office, there is strength in the argument that the intention was to confide the selection to the untrammeled will of the electors.   Experience teaches us that in popular elections those only are chosen who are in sympathy with the people both in thought and aspiration, and that no law is needed to secure the selection of those only who reside in the county or district in which their functions are to be performed.   The Constitution of 1869 contained the provision that "no person shall be eligible to any office, State, county, or municipal, who is not a registered voter in the State." Art. 3, sec. 14.   The omission of a similar article in our present Constitution is not without significance.

But in this case we are not called upon to decide whether or not the appellant would have been eligible to the office of tax assessor if he had not been a citizen of the State.   He was a·citizen of the State. Did the fact that he had changed his residence so short a time before the election as to deprive him of his vote at that election render him ineligible to the office of governor or to any other State or district office?   We think not; and if not, we see no good reason why he should be held ineligible to a county office.

The demurrer to the information should have been sustained.   The judgment is reversed and here rendered for the appellant.

*Reversed and rendered.*

Delivered March 27, 1891.