STATE OF TEXAS V. TEXAS & NEW ORLEANS RAILROAD COMPANY.

Decided January 15, 1910.

#### 1.—Repeal by Implication—Water Closets at Railroad Stations.

The Act of the Twenty-ninth Legislature (Gen. Laws, 1905, page 324) to compel railroad corporations to erect and maintain water closets at passenger stations, was repealed by reasonable implication by the Act of the Thirty-first Legislature on the same subject. (Gen. Laws, 1909, page 175.)

#### 2.—Same.

Unless there be a repugnance or inconsistency between two statutes, the latter will not usually repeal the former in the absence of express words to that effect. The question of repeal must be solved by determining as near as may be the intent of the Legislature. Hence when a subsequent statute was evidently intended as a substitute for a former one on the same subject matter, it will operate to repeal the former, although it contains no express words to that effect.

#### 3.—Repeal—Effect upon Penalties.

After a law is repealed, an action cannot be maintained for the recovery of penalties incurred during the existence of the law.

#### 4.—Same.

If the language of an Act leaves it doubtful whether the Legislature intended thereby to repeal a former Act on the same subject matter, the history of the legislation on the subject may be looked to for aid in determining the question.

Appeal from the District Court of Liberty County. Tried below before Hon. L. B. Hightower, Jr.

*D. J. Harrison,* County Attorney, and *Marshall & Marshall* and *R. D. Wright,* for appellant.—The rule that a prior statute is repealed by implication when there is a new enactment on the subject plainly showing that it was intended to and does comprehend the entire subject matter and to be a substitute for prior statutes on that subject, even though the provisions of the old be not repugnant to the provisions of the new statute, is subject to the limitation that particular provisions of a former Act, constituting the elements of the offense, substantially embodied in the new Act, can not be treated as new enactments, but must be construed from the standpoint of an intention to continue the former law, in the absence of a contrary intent to supersede it, and especially so in case of affirmative statutes. Jesse v. DeShong, 105 S. W., 1011; Johnson v. Rolls, 97 Texas, 453; San Antonio & A. P. Ry. Co. v. Keller, 11 Texas Civ. App., 571; Daviess v. Fairbairn, 3 Howard, 636; Murdock v. City of Memphis, 20 Wallace, 617; Lewis' Sutherland, Statutory Construction, 2d ed., secs. 270, 273 and 331; 26 Am. & Eng. Enc. Law, new ed., 758 and 759.

Where an Act is amended or revised and the former Act expressly or by implication repealed, such provisions of the old law as are substantially reenacted are deemed to be continuous. McMullen v. Guest, 6 Texas, 275; Handel v. Elliott, 60 Texas, 149; Drake v. State, 23 S. W., 620; San Antonio & A. P. Ry. Co. v. Keller, 11 Texas Civ. App., 571; Steamship Company v. Joliffe, 2 Wallace, 450; Bear Lake Waterworks v. Garland, 164 U. S., 1; Lewis' Sutherland on Statutory Construction (2d ed.), secs. 238, 269, 271 and 273; Brown v. Pinkerton, 111 Am. St. Rep., 452.

A new statute may by implication amend an old one without referring to it, and especially when it embodies the substantial provisions of the old one and is not repugnant to its provisions. Snyder v. Compton, 87 Texas, 378; Clark v. Finley, 93 Texas, 171; Johnson v. Martin, 75 Texas, 34; Lewis' Sutherland on Statutory Construction (2d ed.), secs. 239 and 241; 26 Am. & Eng. Enc. Law, 708.

In order to effect a repeal by implication there must be such material change in the elements of an offense as to destroy its identity, or an increase in penalty, or change in its very nature. State v. Smith, 44 Texas, 445; Walker v. State, 7 Texas Crim. App., 247; Fletcher v. Peck, 6 Cranch (U. S.), 138; United States v. Tynen, 11 Wallace, 93; Lewis' Sutherland on Statutory Construction (2d ed.), secs. 251 and 252; 12 Am. & Eng. Enc. Law (2d ed.), 525.

The use of the term "shall hereafter be required'" in chapter 96, Acts of 1909, showed clearly the intention of the Legislature, expressed upon the face of the Act, that the law should have only a prospective effect, and was a saving clause within itself of all causes of action which had accrued under the old law, and would save and entitle a recovery of the whole penalty of one hundred dollars per week prescribed in the old law. Stewart v. Lattner, 116 S. W., 860; Nevada County v. Hicks, 3 S. W., 524; Lewis' Sutherland on Statu-

tory Construction (2d ed.), sec. 237; Black on Interpretation of Laws, page 272, under the head of Saving Clauses.

A civil action by the State against a corporation, for a sum prescribed by statute as a forfeiture, for an omission to perform certain duties, is a liability within the meaning of article III, section 55, of the Constitution of Texas, providing that: "The Legislature shall have no power to release or extinguish, or to authorize the releasing or extinguishing, in whole or in part, the indebtedness, liability or obligation of any corporation or individual to this State, or to any county or other municipal corporation therein," and the Act of 1909, chapter 96, in so far as it could have the effect of releasing such liability, is repugnant thereto. Waters-Pierce Oil Company v. State, 48 Texas Civ. App., 162, holding that the punishment is only a liability; State v. Schuenemann, 18 Texas Civ. App., 485; San Luis Obispo County v. Hendricks, 11 Pac., 682; City of Sacramento v. Dillman, 36 Pac., 385, holding that in case omission is denounced as unlawful, the penalty stands in place of the act to be, performed; Eakin v. Scott, 70 Texas, 444, distinguishing between the word "forfeiture" and "penalty;" State v. Schuenemann, 18 Texas Civ. App., 485, holds penal action, at common law, an action *ex delicto* sounding in tort; Lindsey v. State, 96 Texas, 588, holds judgment on forfeited bail bond could not be released; Ollivier v. City of Houston, 93 Texas, 201, holds uncollected city tax not a debt or obligation, but a liability that could not be released.

*Baker, Botts, Parker & Garwood* and *Parker, Hefner & Orgain,* for appellee.—Cited Wade on Retroactive Laws, secs. 16, 240; Etter v. Railway, 2 W. & W., secs. 60-61; Railway v. Lott, 2 W. & W., secs. 63; State v. Brady, 102 Texas, 408; Aaron v. State, 40 Ala., 309; Stewart v. Lattner, 53 Texas Civ. App., 330; Jesse v. DeShong, 105 S. W., 1011; United States v. Tynen, 11 Wall., 88; Somers v. Commonwealth, 33 S. E., 381; Ewell v. Daggs, 108 U. S., 150; Wharton v. State, 94 Am. Dec., 214; Pannel v. Louisville Tobacco Warehouse Co., 68 S. W., 664; Maryland v. Baltimore & O. Ry. Co., 3 Howard, 534 (11 Law Ed., 714); Pensacola & A. Ry. Co. v. State (Fla.), 110 Am. St., 67; United States v. Tynen, 11 Wallace, 88; Norris v. Crocker, 13 Howard, 429; Etter v. Missouri Pac. Ry. Co., 2 Texas Civ. App., 58; Gulf, C. & S. F. Ry. Co. v. Lott, 2 Texas Civ. App., 63; Long v. Green & Co., 16 Texas Court Reporter, 110; Curran v. Owens, 15 West Virginia, 208.

McMEANS, ASSOCIATE JUSTICE.—The State of Texas, acting through the county attorney of Liberty County, brought this suit against the Texas & New Orleans Railroad Company to recover statutory penalties for alleged violation of chapter 133, Acts of the Twenty-Ninth Legislature, entitled "An Act to compel railroad and railway corporations to erect and maintain water-closets or privies at passenger stations, to regulate the same, to fix penalties and authorize suits therefor;" in not keeping such water-closets or privies at the station of Dayton, in Liberty County, well lighted for the length of time before the arrival and after the departure of its passenger trains

as required by the Act. The original petition sufficiently stated a cause of action if at the time of its filing the Act in question was in force. A general demurrer urged by the defendant was sustained by the court, and, plaintiff declining to amend, its suit was dismissed, hence this appeal.

The Act of the Twenty-Ninth Legislature, which went into effect on July 14, 1905, omitting the caption, which is quoted above, is as follows:

"Section 1. That each railroad and railway corporation operating a line of railway in the State of Texas for the transportation of passengers thereon, shall hereafter be required to construct, maintain and keep in a reasonably clean and sanitary condition, suitable and separate water-closets or privies for both male and female persons at each passenger station on its line of railway, either within its passenger depot or in connection therewith, or within a reasonable and convenient distance therefrom at such station, for the accommodation of its passengers who are received and discharged from its cars thereat, and of its patrons and employes who have business with such railroads and corporations at such stations.

"Sec. 2. That said railroad and railway corporations are hereby required to keep said water-closets and depot grounds adjacent thereto well lighted at such hours in the night-time as its passengers and patrons at such stations may have occasion to be at the same, either for the purpose of taking passage on its trains or waiting for the arrival thereof, or after leaving the same, and for at least one hour both before the schedule time for the arrival of its said trains and after the arrival thereof at said station; provided, that said railroads and corporations shall not be required by the provisions hereof to keep said closets lighted at such stations where the said railroads do not receive and discharge thereat, in the night-time, passengers on and from its cars.

"Sec. 3. Any railroad or railway corporation which fails, neglects or refuses to comply with the provisions of this Act, shall forfeit and pay to the State of Texas the sum of one hundred dollars for each week it so fails and neglects. The county attorney of each county in which such station is located, and in case there is no such county attorney then the attorney for the district including said county, shall, upon credible information furnished him, institute suit or suits in the name of the State of Texas against such defaulting railroad or railway corporation for recovery of said penalty, and in case of said recovery said attorney shall be entitled to one-fourth of the amount thereof as commission for his said services, and the remainder thereof shall be paid into the road and bridge fund of said county; provided, that the State of Texas shall in no event be liable for any costs in suits authorized to be brought by this Act to enforce its provisions."

In 1909 the Thirty-First Legislature passed the following Act, which went into effect on the 12th day of June, 1909, viz.:

"An Act to compel railroad and railway corporations to erect and maintain water-closets or privies at passenger stations, to regulate the same, to fix penalties and authorize suits therefor, and declaring an emergency.

"Be it enacted by the Legislature of the State of Texas:

"Section 1. That each railroad and railway corporation operating a line of railway in the State of Texas for the transportation of passengers thereon, shall hereafter · be required to construct, within ninety days of the taking effect of this Act, and to maintain and keep in a reasonably clean and sanitary condition, suitable and separate water-closets or privies for both male and female persons at each passenger station on its line of railway, either within its passenger depot or in connection therewith, or within a reasonable and convenient distance therefrom at such station, for the accommodation of its passengers who are received and discharged from its cars thereat, and of its patrons and employes who have business with such railroads and corporations at such stations.

"Sec. 2. That said railroad and railway corporations are hereby required to keep said water-closets and depot grounds adjacent thereto well lighted at such hours in the night-time as its passengers and patrons at such stations may have occasion to be at the same, either for the purpose of taking passage on its trains or waiting for the arrival thereof, or after leaving the same, and for at least one hour both before the schedule time for the arrival of its said trains and after the arrival thereof at said station; provided, that said railroads and corporations shall not be required by the provisions hereof · to keep said closets lighted at such stations where the said railroads do not receive and discharge thereat, in the night-time, passengers on and from its cars.

"Sec. 3. Any railroad or railway corporation which fails, neglects or refuses to comply with the provisions of this Act, shall forfeit and pay to the State of Texas the sum of fifty dollars for each week it so fails and neglects. The county attorney of each county in which such station is located, and in case there is no such county attorney then the attorney for the district including said county, shall, upon credible information furnished him, institute suit or suits in the name of the State of Texas against such defaulting railroad or railway corporation for recovery of said penalty, and in case of said recovery said attorney shall be entitled to one-fourth of the amount thereof as commission for his said services, and the remainder thereof shall be paid into the road and bridge fund of said county; provided, that ·the State of Texas shall in no event be liable for any costs in suits authorized to be brought by this Act to enforce its provisions."

The plaintiff's petition was filed July 15, 1909, and the penalties sought to be recovered were for the alleged violations of the Act of 1905, which accrued prior to the passage of the Act of 1909. The only question presented on this appeal for our determination is whether the Act of 1905 was repealed by the Act of 1909. If it was, then all acts or omissions in violation of the former Act, as well as all penalties incurred thereunder, were pardoned and such penalties were no longer enforcible.

It will be observed by a comparison of the two statutes that the latter is almost an exact copy of the former with but three notable exceptions; viz.: First, ninety days after the Act went into effect was allowed in the latter within which to meet the requirements of

the law, when no time for such purpose was allowed in the former; and for this reason the Act of 1905 was by our Supreme Court in Missouri, K. & T. Ry. Co. v. State, 100 Texas, 420, declared unconstitutional in so far as the requirements for erection and equipment of closets were concerned; second, the time of keeping the closets lighted was fixed by the latter at one-half hour before the arrival and departure of passenger trains, whereas the former fixed such time at one hour, and third, the penalty for violation of the provisions of the last Act was fixed at fifty dollars for each week, while in the former the penalty was one hundred dollars per week.

There was no express repeal of the former Act, and repeals by implication are not favored. Unless there be a repugnancy or inconsistency between two statutes, the general rule is that the latter will not repeal the former in the absence of express words to that effect. But the question of repeal, like every other question arising upon the construction of a statute, must be solved by determining as near as may be the intent of the Legislature. St. Louis S. W. Ry. Co. v. Kay, 85 Texas, 559; Rogers v. Watrous, 8 Texas, 62. In the case first cited Judge Gaines quotes with approval from Watrous v. Rogers as follows:

"A subsequent statute revising the subject matter of a former one, and evidently intended as a substitute for it, although it contains no express words to that effect, must operate to repeal the former to the extent to which its provisions are revised and supplied. So though a subsequent statute be not repugnant in its provisions to a former one, yet if it was clearly intended to prescribe the only rules which should govern, it repeals the prior statute."

It seems clear to us that the latter statute was intended to prescribe the only rules which should govern. This conclusion is compelled in part from the changes made in the old by the new, the first of which is, as before stated, to fix ninety days from the date the Act became effective in which to meet the requirements therein prescribed, and providing that the requirements of the Act as to construction and maintenance should *thereafter* be observed.

It can not be contended, we think, that the Legislature intended that the former Act should remain in force until the latter Act should become effective, while at the same time providing in the subsequent Act that railway companies should have ninety days after the latter Act went into effect within which to prepare to do the very things that the first Act required them to do. This contention is further strengthened by the fact that the penalty for violation of the former Act is fixed at a different sum from that fixed by the last, and the requirements of the railway companies are lessened as to the length of time the closets are to be kept open and lighted. We think that the new enactment is a revision of the old and that it was intended to and does comprehend the entire subject matter and was intended to be a substitute for all prior statutes on the subject, and that it operates as a repeal by reasonable implication of the Act of 1905. Railway v. Kay, and Rogers v. Watrous, *supra;* Ex parte Valasquez, 26 Texas, 178; Cain v. State, 20 Texas, 355; Voight v. Gulf, W. T. & P. Ry. Co., 94 Texas, 357; Jesse v. De Shong, 105 S. W., 1015;

Tunstall v. Wormley, 54 Texas, 480; State v. Brady, 102 Texas, 408; Stewart v. Lattner, 53 Texas Civ. App., 330; U. S. v. Tynen, 11 Wall., 88; 1 Lewis' South. Stat. Con., 515; 26 Am. & Eng. Ency., 737.

Thus far we have looked for the intention of the Legislature through the language of the Act. If doubt remains as to the legislative intention we may look to the history of the legislation on this subject (Cain v. State, *supra*), and to the fact that the Act of 1905 had proved in part ineffectual, that part of the Act requiring the erection and equipment of closets having been by our Supreme Court declared unconstitutional. It was the evident intention of the Legislature, from the provisions of the Act of 1905, to require of railway companies not only the erection of such closets at all stations where passengers were received and discharged in the night-time, but that such closets should be kept lighted for a definite period each night. The Act requiring the erection of closets being invalid, the legislative design for the maintenance of lights at closets at all stations must inevitably fail as to such stations where there were no closets to be lighted, and when there was no law to compel their construction. In view of the fact that the first Legislature that assembled after the decision of the Supreme Court referred to adopted an entirely new Act, freed of the defect which rendered the old unconstitutional, without in any way referring to the old, imposing a different penalty and exacting less onerous duties, and without any saving clause as to penalties for violations of the old law in the particulars in which it was valid, is to our mind conclusive evidence that the Legislature intended thereby to make the last Act comprehend the entire subject matter of the legislation and to prescribe the only rule which should thereafter govern. We are of opinion, therefore, that the court did not err in sustaining the general demurrer to plaintiff's petition. The judgment of the court below is affirmed.

*Affirmed.*

Writ of error refused.