## SHRIBER et al. v. CULBERSON et al.
### No. 955.

Court of Civil Appeals of Texas. Waco.
Sept. 18, 1930.

Rehearing Denied Oct. 16, 1930.

T. R. Mears, of Gatesville, for appellants.

R. B. Cross, of Gatesville, for appellees.

BARCUS, J.

C. D. Shriber and 82 other tax-paying citizens of the Turnersville county line rural high school district instituted this suit against the trustees of said school district and the tax collectors of Coryell, Hamilton, and Bosque counties to restrain the collection of the school tax levied for the year 1929 against their respective properties.

In March, 1929, said school district was created by the grouping of seven rural school districts located on the lines of Coryell, Hamilton, and Bosque counties. There were embraced in said district about 430 taxpayers. Trustees were duly elected and a maintenance tax of $1 was voted. In May, 1929, the trustees levied a tax of $1 on all property in the district for the year 1929. In August, 1929, the trustees appointed O. C. Weaver as tax assessor for the school district, and he duly assessed all of the property in said district at the same values as it had been for state and county purposes. After the assessment was made and the tax rolls compiled, the trustees found that the valuations as rendered to and assessed by said tax assessor, based on the $1 levy, would lack something like $4,500 of producing sufficient revenue to maintain a nine months' school. The trustees appointed an equalization board and gave them the information that the school would need this additional revenue, and said board was requested to equalize the taxes of the district and raise same sufficiently to produce said amount. The board of equalization duly qualified as such under the law, and estimated that it would be necessary to raise the valuation of all property in the district about 62 per cent. They classified the real estate in three general classes, as required of the commissioners' court sitting as a board of equalization under article 7206 of the Revised Statutes. They raised the assessments of each individual taxpayer in the district on a general basis of 50 per cent. on personal property and 70 per cent. on real estate, and legally notified each of them of said raise. A large number of the taxpayers, in response to the notice sent, appeared before the board of equalization, and in a number of instances the proposed raise of assessment was lowered and adjustments made, as to the board seemed just and proper. The total assessed values in the district were raised from $713,000 to $1,-150,000.

The trial court, after a full hearing, denied appellants any relief.

■ Appellants present ten propositions, and, fairly summarized, they present the following issues: First, they contend that the assessment as made by the board of equalization was void and unenforcible because they were appointed and met and acted for the sole purpose of raising the taxable values of the property in order to produce an additional $4,500; their contention relative to said matter being that the board of equalization can only equalize property values and cannot raise same, and that the board of trustees had no right or power to instruct the board of equalization to raise the values to the extent necessary to produce a specified amount. The record shows that the property had been valued in the district by the district tax assessor at the same value as that levied for state and county purposes by the county assessor. No one contends that the amount at which his individual property was finally assessed was more than its actual cash market value. No one contends that the board of equalization was not honest, and the record shows that it was very diligent and careful to equalize the property values on a fair and equitable basis. We think there is no merit in appellants' contention that the board of equalization could not in their deliberations take into consideration the amount of revenue that was necessary to be raised. The purpose of all taxation is to levy an equal burden upon property of the inhabitants of the district to be taxed sufficiently to raise the required revenue. This was fully and ably discussed in the case of McPhail v. Tax Collector (Tex. Civ. App.) 280 S. W. 260 (error refused), where it was specifically held that there was nothing either illegal or wrong in the board of equalization fixing the valuation of property at an amount sufficient to raise the required revenue, provided said valuation did not exceed the actual cash market value thereof.

■ Appellants further contend that the assessment as made by the board of equalization was illegal and void because it arbitrarily raised the personal property 50 per cent. and the real property 70 per cent. This contention, we think, is not borne out by the record. While it is true, when the board of equalization met for the purpose of equalizing the values, they selected that method as a general basis; after the notices, however, were sent

to the respective parties, many changes were made, and the assessed values for taxes were adjusted after a full and complete hearing from those who appeared to make protest. A few of the appellants testified that in their opinion their property was rendered at a greater value than that of some of the others. The testimony as a whole shows that there was no marked discrepancy in valuations placed on the respective properties by said board of equalization. The testimony shows almost without dispute that the board of equalization carefully and fairly raised the assessed value of all property in the district and tried honestly to the best of their ability to assess all the property equally according to its value, and none of it was assessed for more than its actual market cash value. Under our law, boards of equalization have large discretionary powers, and their judgments, when rendered in good faith, after proper notice and due hearing has been had, are binding. Mere difference of opinion regarding reasonableness of valuations of boards of equalization will not warrant interference by the courts. This question was thoroughly discussed and numerous authorities cited in support thereof in Early v. City of Waco (Tex. Civ. App.) 3 S.W.(2d) 131.

Appellants further contend that the tax assessment as originally made by O. C. Weaver, tax assessor, was absolutely void, and that, therefore, the board of equalization could not equalize said taxes, because Weaver, at the time he was appointed tax assessor, was not a resident citizen of the district; and, further, because he was at said time the deputy county tax assessor of Coryell county. The record shows without dispute that Weaver was not a resident citizen within the school district, and that in February, 1929, he was appointed deputy tax collector for Coryell county, and as such assisted the tax assessor in assessing taxes for 1929 in Coryell county. O. C. Weaver testified that when he was appointed and duly qualified by taking the oath and executing the bond as tax assessor of the school district in August he had completed his labors as deputy county tax collector and was not drawing any pay and did not consider or think he was in fact a deputy county tax collector. The Constitution and laws of this state provide that a person cannot hold but one office of emolument at a time. Brumby v. Boyd, 28 Tex. Civ. App. 164, 66 S. W. 874. They further provide that all officers must live in the county, precinct, or city where he holds office. State v. Fortinberry (Tex. Civ. App.) 276 S. W. 466; Id. (Com.

App.) 283 S. W. 146. Our courts uniformly hold, however, that, where a person is regularly appointed or elected to an office and enters upon the discharge of his duties, he is a de facto officer, and as such his acts are as binding as though he was an officer de jure so long as he continues to act as a de facto officer. 46 C. J. 1053; Blewett v. Richardson Independent School District (Tex. Com. App.) 240 S. W. 529; Martin v. Grandview Independent School District (Tex. Civ. App.) 266 S. W. 607; Ex parte Tracey (Tex. Cr. App.) 93 S. W. 538; City of Christine v. Johnson (Tex. Civ. App.) 255 S. W. 629; 46 C. J. 1053; Williams v. Castleman, 112 Tex. 193, 247 S. W. 263, 269, par. 9. Our courts have further uniformly held that a party who is duly appointed or elected and qualifies as an officer is a de facto officer, although he may be in law disqualified from acting. 46 C. J. 1056; Germany v. State, 109 Tex. Cr. R. 180, 3 S.W. (2d) 798; Broach v. Garth (Tex. Civ. App.) 50 S. W. 594. Unquestionably, Weaver was regularly appointed and duly qualified tax assessor, and by his appointment and acceptance he thereby relinquished any right he might have had to the office of deputy county tax collector. Our courts uniformly hold that, where a party holding an office in good faith accepts another with the intention of abandoning his first office, his first office thereby becomes vacant as a matter of law. Biencourt v. Parker, 27 Tex. 558; Welder v. Sinton Independent School District (Tex. Civ. App.) 218 S. W. 106; Id. (Com. App.) 234 S. W. 1093; State v. Brinkerhoff, 66 Tex. 45, 17 S. W. 109; Odem v. Sinton Independent School District (Tex. Com. App.) 234 S. W. 1090. In the Odem v. Sinton Independent School District Case, as well as in the Welder v. Sinton Independent School District Case, supra, the Supreme Court reversed and rendered the judgments of the lower courts on the theory that the alleged tax assessor had not relinquished his other office, but, on the contrary, had deliberately and intentionally held on to his prior office and had refused to qualify as school tax assessor for fear that it would, as a matter of law, cause him to vacate his former office. The fact that Mr. Weaver, at the time he was appointed, qualified and acted as tax assessor for the district, was a nonresident thereof, would not make his acts as such void. He was clearly, under the record, a de facto tax assessor for said district.

We have carefully examined all of appellants' propositions, and same are overruled. The judgment of the trial court is affirmed.